**DOUGLAS R. BROWN, ESQ.**
Nevada State Bar No. 7620
**LEMONS, GRUNDY & EISENBERG**
6005 Plumas Street, Third Floor
Reno, Nevada 89519
Telephone: (775) 786-6868
Email: drb@lge.net

*Counsel for Plaintiff ALPS Property & Casualty Insurance Company*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| ALPS PROPERTY & CASUALTY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>LEVINE LAW GROUP, INC.; and IRA S. LEVINE,<br><br>Defendants. | **Case No.**<br><br>**COMPLAINT** |

Plaintiff ALPS Property & Casualty Insurance Company ("ALPS"), pursuant to 28 U.S.C. §§ 2201(a) and 2202 and Federal Rules of Civil Procedure 8(a) and 57, for its complaint against Defendants Levine Law Group, Inc. ("Levine Firm") and Ira S. Levine ("Levine" and together with the Levine Firm, "Defendants"), alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

1.    ALPS is an insurance company and corporation organized under the laws of the State of Montana with its principal place of business in the State of Montana; ALPS is a citizen of the State of Montana.

2.    The Levine Firm is a professional corporation formed under the laws of the State of Nevada with its principal place of business in Henderson, Nevada, located in Clark County, Nevada; the Levine Firm is a citizen of the State of Nevada.

3.    Levine is an attorney licensed in the State of Nevada; the President, Secretary, Treasurer, and Director of the Levine Firm, whose principal place of business is located in

///

LEMONS, GRUNDY
& EISENBERG
A PROFESSIONAL CORPORATION
6005 PLUMAS STREET
THIRD FLOOR
RENO, NV 89519-6069
(775) 786-6868

1

Henderson, Nevada; and, upon information and belief, a resident of the State of Nevada; Levine is, upon information and belief, domiciled in and a citizen of the State of Nevada.

4.    The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1) because complete diversity exists between ALPS and Defendants, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

5.    Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b), and in this Division, pursuant to LR IA 1-8, because a substantial part of the events giving rise to the claims for relief occurred in this District.

## GENERAL ALLEGATIONS

6.    In this insurance coverage action, ALPS seeks a judgment declaring Lawyers Professional Liability Insurance Policy No. ALPS9032-16 issued by ALPS to the Levine Firm for the policy period May 15, 2019 to May 15, 2020 ("Policy") does not afford coverage to Defendants with respect to the claim ("Claim") by The Parking REIT, Inc. ("TPR"), MVP Realty Advisors, LLC ("MVP"), and Michael V. Shustek ("Shustek" and together with TPR and MVP, "Shustek Parties"), as presently articulated in the suit styled *The Parking REIT, Inc., et al. v. Ira S. Levine, et al.,* No. A-20-808902-C (Dist. Ct. Clark Cty., Nev.) ("Suit").  A true and correct copy of the Policy is attached as Exhibit 1.  A true and correct copy of the January 21, 2020 Complaint in the Suit ("Complaint") is attached as Exhibit 2.

### I.  Defendants' Representation of the Shustek Parties

7.    The Claim arises from Levine's representation and involvement with the Shustek Parties—TPR, MVP, and Shustek—during 2017 and 2018 in connection with TPR's attempt to become a publicly traded company.  (Exhibit 2 ¶¶ 7, 9).

8.    During Levine's involvement with the Shustek Parties in 2017 and 2018, the Shustek Parties allege TPR was an "incorporated Real Estate Investment Trust" focused on investing in parking lots and parking garages, MVP was a Nevada limited liability company and "was at one time the advisor to TPR, providing advisory and management services to TPR," and Shustek was "a shareholder in and CEO of TPR and a principal and Manager of" MVP. (Exhibit 2 ¶¶ 1-3).

LEMONS, GRUNDY
& EISENBERG
A PROFESSIONAL CORPORATION
6005 PLUMAS STREET
THIRD FLOOR
RENO, NV 89519-6069
(775) 786-6868

2

9.      The Shustek Parties further allege, at all relevant times, Levine was counsel for TPR, MVP, and Shustek, General Counsel, Chief Administrative Officer, and Chief Operating Officer of MVP, and "held himself out as General Counsel for TPR and various affiliates of it and" was "effectively their General Counsel".  (Exhibit 2 ¶¶ 4, 11).

**A.  Levine's Employment Agreement**

10.     Levine's Employment Agreement with MVP, effective July 1, 2017 ("Employment Agreement"), provided Levine with an annual salary of $500,000 per year, a percentage of fees associated with MVP's repayment of monies from members, and eligibility to participate in TPR's equity participation plans.  (Exhibit 2 ¶ 11).

11.     The Shustek Parties allege Levine drafted the Employment Agreement and "presented it to Shustek and [MVP] for review without recommending that Shustek or [MVP] retain independent counsel to review it prior to its execution."  (Exhibit 2 ¶ 12).

12.     The Shustek Parties further allege, "at the time Levine negotiated the Employment Agreement for himself," he knew "TPR intended to pursue an IPO, and also knew about the imminent prospect of TPR's issuance of Restricted Stock Units ("RSUs") to its officers, who were provided by [MVP][,]" and "TPR contemplated that in conjunction with the IPO, TPR's management would be internalized, making Levine a TPR officer and employee, eligible for RSUs."  (Exhibit 2 ¶ 13).

**B.  TPR's Attempt to Become a Publicly Traded Company**

13.     The Shustek Parties allege TPR "began taking steps to become publicly traded" in 2017, "including speaking with investment bankers to raise capital through an initial public offering ("IPO")."  (Exhibit 2 ¶¶ 1, 9).

14.     The Shustek Parties allege "TPR's meetings with investment bankers often included Shustek, Levine, and/or Daniel G. Huberty ("Huberty"), TPR's President." (Exhibit 2 ¶ 10).

15.     In or around 2017, the Shustek Parties allege Levine and an unnamed attorney from another law firm "began a campaign to oust Shustek from TPR[.]"  (Exhibit 2 ¶ 16).

///

LEMONS, GRUNDY
& EISENBERG
A PROFESSIONAL CORPORATION
6005 PLUMAS STREET
THIRD FLOOR
RENO, NV 89519-6069
(775) 786-6868

3

16.    The Shustek Parties further allege Levine, in connection with the alleged campaign to oust Shustek, "consistently took positions to paint Shustek in a negative light, to lobby others to take positions adverse to him, and even at one point to attempt to convince TPR to terminate Shustek so that Levine could take over as CEO of TPR."  (Exhibit 2 ¶ 17).

17.    By the end of 2017, the Shustek Parties allege TPR "had preliminarily selected CitiBank, KeyBank, Raymond James, and others to underwrite the IPO."  (Exhibit 2 ¶ 18).

18.    On January 18, 2018, the Shustek Parties allege Levine "attended a due diligence meeting with potential underwriters' counsel" and "published without Shustek's knowledge or consent the false statement to underwriters' counsel that Shustek was under FBI investigation." (Exhibit 2 ¶ 18).

19.    The Shustek Parties allege Levine's "disclosures of confidential and privileged information to underwriters' counsel was detrimental to the progress with underwriters" and, on January 30, 2018, Shustek "initially offered to step down as CEO of TPR[.]"  (Exhibit 2 ¶ 20). On February 2, 2018, the Shustek Parties allege Shustek reversed course and announced "he would not step down" as CEO of TPR.  (Id. ¶ 21).

20.    On February 3, 2018, following a meeting of the TPR Board to discuss the IPO, the Shustek Parties allege Levine proposed an employee of TPR, Edwin H. Bentzen ("Bentzen") "make a pretextual whistleblower complaint . . . as a means of attempting to pressure Shustek into abandoning his position in TPR."  (Exhibit 2 ¶¶ 22-23).

21.    The Shustek Parties allege Levine subsequently "started an internal investigation of the contrived 'whistleblower' complaint" and "encourag[ed] and facilitat[ed] this so-called whistleblower complaint against Shustek[.]"  (Exhibit 2 ¶¶ 26-27).

22.    On or around February 15-17, 2018, the Shustek Parties allege "TPR's Audit Committee engaged the law firm Wilson Sonsini Goodrich & Rosati, LLP ("WS") to conduct an investigation into Bentzen's whistleblower allegations . . . which WS immediately commenced." (Exhibit 2 ¶ 29).  The Shustek Parties allege the investigation "cost millions of dollars, prevented TPR from meeting reporting and filing deadlines, triggered costly investigations and suits, and ultimately caused significant damage not only to [MVP], but also to TPR."  (Id.).

LEMONS, GRUNDY
& EISENBERG
A PROFESSIONAL CORPORATION
6005 PLUMAS STREET
THIRD FLOOR
RENO, NV 89519-6069
(775) 786-6868

4

23.    As a result of the whistleblower investigation, the Shustek Parties allege TPR's auditors refused "to resume working until the conclusion of the investigation, which resulted in TPR missing its 2017 10-K filing deadline."  (Exhibit 2 ¶ 40).

24.    The Shustek Parties further allege Levine, during the investigation, "lobbied the Board and TPR staff for support to appoint him as CEO as soon as Shustek could be ousted." (Exhibit 2 ¶ 37).

25.    On April 25, 2018, the Shustek Parties allege "the so-called whistleblower investigation concluded, exonerating Shustek of intentional wrongdoing."  (Exhibit 2 ¶ 42).  On April 29, 2018, the Shustek Parties allege the Board of TPR "voted 7-1 to keep Shustek as TPR's CEO[.]" (*Id*. ¶ 44).

26.    On June 19, 2018, MVP terminated the Employment Agreement with Levine "due to Levine's conduct."  (Exhibit 2 ¶ 45).

27.    The Shustek Parties allege, "[b]ecause of [Levine's] . . . adverse actions, TPR was ultimately unable to proceed with its planned IPO" and the New York Stock Exchange ("NYSE") "eventually declined the previously approved listing."  (Exhibit 2 ¶ 47).  The Shustek Parties further allege the "loss of value to TPR for not being listed with NYSE is substantial, and is in the millions of dollars."  (*Id*.).

28.    The Shustek Parties allege on July 12, 2018, "following the NYSE non-listing, TPR was forced to submit a new application for listing with NASDAQ[,]" but "that listing also ultimately failed as a result of the actions and inaction of Levine."  (Exhibit 2 ¶ 48).

29.    The Shustek Parties further allege "TPR continued its efforts to internalize its management . . . and to obtain a listing, [but] it was not able to overcome the damage caused by Levine's actions and inaction[,]" which "caused [the Shustek Parties] to incur in excess of $10 million in various additional out of pocket expenses."  (Exhibit 2 ¶¶ 49-50).

## II.  The Suit

30.    On January 21, 2020, the Shustek Parties filed the Complaint against Defendants in the Suit.  (Exhibit 2).

///

LEMONS, GRUNDY
& EISENBERG
A PROFESSIONAL CORPORATION
6005 PLUMAS STREET
THIRD FLOOR
RENO, NV 89519-6069
(775) 786-6868

5

31.     In the Suit, the Shustek Parties allege Levine engaged in a myriad of schemes to personally benefit himself against the best interests of the Shustek Parties throughout TPR's attempts to become publicly traded.  (Exhibit 2 ¶¶ 13, 16-20, 23, 27, 29-31, 36-40, 43).

32.     The Shustek Parties allege Levine made disparaging and false statements regarding Shustek to "active and potential business partners" and was involved in a "sham whistleblower complaint and investigation" against Shustek.  (Exhibit 2 ¶¶ 18, 58, 69, 78, 84, 94, 112, 122).

33.     The Shustek Parties further allege Defendants' "actions and inaction" caused the Shustek Parties to incur more than $10 million in out-of-pocket expenses, Defendants' "defamatory statements and invasion of Shustek's privacy" caused Shustek to suffer "emotional distress and damage to his reputation", Defendants' "intentional conduct was oppressive, fraudulent, and made or committed with malice", and Defendants' "actions were directly contrary to their duties owed" to the Shustek Parties.  (Exhibit 2 ¶¶ 50-53).

34.     The Shustek Parties allege the following causes of action in the Suit, each of them by all Shustek Parties against all Defendants unless otherwise noted: (a) legal malpractice; (b) breach of fiduciary duty; (c) breach of confidential relationship—against Levine; (d) interference with prospective economic relations; (e) defamation per se—Shustek against Levine; (f) business disparagement—TPR against Levine; (g) false light—Shustek against Levine; (h) breach of implied covenant of good faith and fair dealing; and (i) declaratory relief. (Exhibit 2).

35.     In the Shustek Parties' first cause of action, for legal malpractice, the Shustek Parties allege Defendants "maintained a continuous attorney-client relationship with [the Shustek Parties] at all times relevant to these claims."  (Exhibit 2 ¶ 56).  The Shustek Parties allege Defendants' "actions and inaction described" in the Complaint, "including Levine's statements to underwriters' counsel and involvement in the sham whistleblower complaint and investigation, breached Defendants' duties owed to" the Shustek Parties.  (*Id*. ¶ 58).  The Shustek Parties further allege Defendants' "conduct was knowing, intentional, oppressive, malicious, and done in ///

LEMONS, GRUNDY
& EISENBERG
A PROFESSIONAL CORPORATION
6005 PLUMAS STREET
THIRD FLOOR
RENO, NV 89519-6069
(775) 786-6868

6

conscious disregard of [the Shustek Parties'] rights and of the probable harmful consequence of Defendants' wrongful actions." (*Id.* ¶ 61).

36.    As relief for Defendants' alleged legal malpractice, the Shustek Parties seek "actual loss and damages" exceeding $15,000 and "punitive and exemplary damages", pursuant to Nev. Rev. Stat. 42.005, "to punish and deter Defendants for their conduct and to make an example to deter others for acting similarly." (Exhibit 2 ¶¶ 60-61).

37.    In the Shustek Parties' second cause of action, for breach of fiduciary duty, the Shustek Parties allege Levine served as an attorney and "trusted business advisor" to the Shustek Parties, and Defendants violated their attorney and non-attorney fiduciary duties to the Shustek Parties by, *inter alia*, making "inflammatory false statements", encouraging the "sham whistleblower complaint and investigation", and delivering Levine's "Employment Agreement to Shustek and [MVP] for review without recommending that Shustek or [MVP] retain independent counsel to review it prior to its execution." (Exhibit 2 ¶¶ 65-69). As relief for Defendants' alleged breaches of fiduciary duty, the Shustek Parties seek "actual loss and damages" exceeding $15,000, an award of attorneys' fees and costs of suit, and "punitive and exemplary damages" pursuant to Nev. Rev. Stat. 42.005. (Exhibit 2 ¶¶ 70-73).

38.    In the Shustek Parties' third cause of action, for breach of a confidential relationship against Levine, the Shustek Parties allege Levine "developed a confidential relationship with Shustek and the other" Shustek Parties, and Levine breached his confidential relationship with the Shustek Parties by, *inter alia*, making "inflammatory false statements", encouraging the "sham whistleblower complaint and investigation", and delivering Levine's "Employment Agreement to Shustek and [MVP] for review without recommending that Shustek or [MVP] retain independent counsel to review it prior to its execution." (Exhibit 2 ¶¶ 75-78). As relief for Levine's alleged breach of a confidential relationship, the Shustek Parties seek actual damages exceeding $15,000 and "punitive and exemplary damages" pursuant to Nev. Rev. Stat. 42.005. (*Id.* ¶¶ 79-80).

39.    In the Shustek Parties' fourth cause of action, for interference with prospective economic relations, the Shustek Parties allege Defendants interfered with TPR's "prospective

LEMONS, GRUNDY
& EISENBERG
A PROFESSIONAL CORPORATION
6005 PLUMAS STREET
THIRD FLOOR
RENO, NV 89519-6069
(775) 786-6868

7

NYSE relationship" through the conduct described in the Complaint, "including Levine making false inflammatory statements to underwriters' counsel and Defendants' involvement in the sham whistleblower complaint and investigation[.]" (Exhibit 2 ¶ 86).  As relief for Defendants' alleged interference with prospective economic relations, the Shustek Parties seek actual damages exceeding $15,000, "special damages in the form of attorneys' fees incurred due to Defendants' acts", an award of attorneys' fees and costs of suit, and "punitive and exemplary damages" pursuant to Nev. Rev. Stat. 42.005.  (*Id*. ¶¶ 88-92).

40.     In the fifth cause of action in the Complaint, defamation *per se* by Shustek against Levine, Shustek alleges Levine, "[a]t the private meetings with underwriters' counsel, . . . made the false and defamatory statement concerning Shustek that he was under FBI investigation to those third persons present at the meeting." (Exhibit 2 ¶ 94).  Shustek alleges Levine's "statement was an accusation of personal misconduct in Shustek's business, harmed Shustek's reputation, would tend to lower him in the estimation of the community, and deterred the underwriters from dealing with him on a potential IPO." (*Id*.).  Shustek further alleges Levine's statement "caused the underwriters to refuse to conduct business with Shustek, thereby causing the TPR IPO and listing on NYSE to fail", which "caused Shustek millions of dollars in damages to his business interests." (*Id*. ¶ 99).

41.     As relief for Levine's alleged defamation, Shustek alleges his "damages are presumed" and seeks punitive damages, exemplary damages, and an award of attorneys' fees and costs of suit.  (Exhibit 2 ¶¶ 98, 101-102).

42.     In the sixth cause of action in the Complaint, business disparagement by TPR against Levine, TPR alleges Levine, "[a]t the private meetings with underwriters' counsel, . . . made the false and defamatory statement concerning TPR that TPR's CEO Shustek was under investigation by the FBI to those third persons present at the meeting." (Exhibit 2 ¶ 104).  TPR alleges Levine's statement "caused the underwriters to refuse to conduct business with Shustek, thereby causing the TPR IPO and listing on NYSE to fail", which "caused TPR millions of dollars in lost revenue and value." (*Id*. ¶ 107).  As relief for Levine's alleged business disparagement, TPR seeks "actual and substantial damages . . . directly caused by

LEMONS, GRUNDY
& EISENBERG
A PROFESSIONAL CORPORATION
6005 PLUMAS STREET
THIRD FLOOR
RENO, NV 89519-6069
(775) 786-6868

8

Levine's defamatory statement", "punitive and exemplary damages", and an award of attorneys' fees and costs of suit. (*Id*. ¶¶ 107-110).

43. In the seventh cause of action in the Complaint, false light by Shustek against Levine, Shustek alleges Levine's "false and defamatory statement concerning Shustek that he was under investigation by the FBI . . . placed Shustek before the underwriters' counsel in a false light, thereby invading Shustek's privacy." (Exhibit 2 ¶ 112). Shustek alleges Levine "made the statement with malice" and "the statement was a major misrepresentation of Shustek's character, history, and activities, and Levine reasonably should have expected Shustek to take serious offense to its publication." (*Id*. ¶¶ 112-113). Shustek further alleges Levine's "statement and the contrived whistleblower investigation caused the underwriters to refuse to conduct business with Shustek, thereby causing the TPR IPO listing on NYSE to fail", which "caused Shustek millions of dollars in damages to his business interests." (*Id*. ¶ 114).

44. As relief for Shustek's false light cause of action, Shustek seeks "actual and substantial damages . . . directly caused by Levine's defamatory statement", "punitive and exemplary damages", relief for the "mental distress and personal humiliation" Shustek suffered "from Levine's serious accusations of illegal conduct in his business", and an award of attorneys' fees and costs of suit. (Exhibit 2 ¶¶ 114-118).

45. In the Shustek Parties' eighth cause of action, for breach of the implied covenant of good faith and fair dealing, the Shustek Parties allege Levine, "by his conduct described" in the Complaint, "including his statements to underwriters' counsel and involvement in the sham whistleblower complaint and investigation, materially breached the covenant of good faith and fair dealing in" Levine's Employment Agreement with MVP. (Exhibit 2 ¶ 122). The Shustek Parties further allege Levine "deliberately contravened the intention and spirit of the [Employment Agreement] and performed in a manner that was unfaithful to the purpose of the [Employment Agreement], thus denying . . . [MVP's] and TPR's justified expectations." (*Id*.). As relief for Levine's alleged breach of the Employment Agreement, the Shustek Parties seek an award of attorneys' fees as the "prevailing party . . . in an action 'concerning' the contract" and ///

LEMONS, GRUNDY
& EISENBERG
A PROFESSIONAL CORPORATION
6005 PLUMAS STREET
THIRD FLOOR
RENO, NV 89519-6069
(775) 786-6868

9

allege MVP "is entitled to recover the $500,000 paid to Levine under the Employment Agreement, as well as its other losses flowing from Levine's breaches."  (*Id*. ¶¶ 124-125).

46.    In the Shustek Parties' ninth cause of action, the Shustek Parties seek declaratory relief with respect to the "parties' rights, duties and obligations under the Employment Agreement." (Exhibit 2 ¶ 128).  The Shustek Parties allege "a controversy exists as to whether, due to Levine's actions described [in the Complaint], [MVP] has any obligation to pay Levine under the Employment Agreement, and whether [MVP] is entitled to reimbursement of the compensation paid to Levine under the Employment Agreement."  (*Id*. ¶ 127).  In addition to declaratory relief, with respect to the Shustek Parties' ninth cause of action, the Shustek Parties seek an award of attorneys' fees and costs of suit.  (*Id*. ¶ 129).

47.    In the Shustek Parties' prayer for relief in the Complaint, the Shustek Parties seek: a "declaratory judgment from [the] Court setting forth the rights, interests, and liabilities amongst the parties as to the Employment Agreement"; "damages against Defendants in an amount in excess of $15,000"; "interest against Defendants at the maximum rate allowable by law"; the Shustek Parties' "reasonable attorney's fees and costs" incident to the Suit; "an award of punitive damages"; and "such other and further relief as the Court deems just and proper."  (Exhibit 2, Prayer for Relief ¶¶ 130-135).

### III.  The Policy and Previous Applications

### A.  2018 Application and 2018-2019 Policy

48.    On May 1, 2018, Levine executed an application ("2018 Application") on behalf of the Levine Firm for Lawyers Professional Liability Insurance Policy No. ALPS9032-15 issued by ALPS to the Levine Firm for the policy period May 15, 2018 to May 15, 2019 ("2018-2019 Policy").

49.    In the Individual Attorney Supplement to the 2018 Application Levine executed on May 1, 2018, Levine answered "No" to the question: "Have you or will you render professional legal services to any entity in which you serve as an owner, officer, director, employee or other fiduciary, or in which you serve in any capacity to directly or indirectly control, operate or manage such entity?  This includes both profit and not-for-profit entities."

LEMONS, GRUNDY
& EISENBERG
A PROFESSIONAL CORPORATION
6005 PLUMAS STREET
THIRD FLOOR
RENO, NV 89519-6069
(775) 786-6868

10

50.     In the Individual Attorney Supplement to the 2018 Application Levine executed on May 1, 2018, Levine "represent[ed] to and assure[d] [ALPS] that the information contained in" the Individual Attorney Supplement to the 2018 Application was "true and correct".

51.     ALPS issued the 2018-2019 Policy to the Levine Firm for the policy period May 15, 2018 to May 15, 2019.

**B.  2019 Application**

52.     On April 25, 2019, Levine executed the application on behalf of the Levine Firm for the Policy ("2019 Application").

53.     In the Claim History Section of the 2019 Application Levine executed on April 25, 2019, Levine answered "No" to the question: "Since the date of your previous application with ALPS, have you or any member of the Firm become aware of or acquired knowledge of any fact, circumstance, act, error, or omission that could reasonably be expected to be the basis of a claim against any current or former Attorney in the Firm or any Predecessor Firms, regardless of the merit of such claim?"

54.     In the Individual Attorney Supplement to the 2019 Application Levine executed on April 23, 2019, Levine answered "No" to the questions: "Since the date of your previous application with ALPS, have you become aware of or do you have knowledge of any fact, circumstance, act, error, or omission that could reasonably be expected to be the basis of a claim against you or any current or former Attorney in the Firm or its predecessors, regardless of the merit of such claim?"; and "Have you or will you render professional legal services to any entity in which you serve as an owner, officer, director, employee or other fiduciary, or in which you serve in any capacity to directly or indirectly control, operate or manage such entity?  This includes both profit and not-for-profit entities."

55.     In the Individual Attorney Supplement to the 2019 Application executed on April 24, 2019 by Louis E. Garfinkel ("Garfinkel")—the other individual insured under the Policy—Garfinkel answered "No" to the question: "Since the date of your previous application with ALPS, have you become aware of or do you have knowledge of any fact, circumstance, act,

///

LEMONS, GRUNDY
& EISENBERG
A PROFESSIONAL CORPORATION
6005 PLUMAS STREET
THIRD FLOOR
RENO, NV 89519-6069
(775) 786-6868

1   error, or omission that could reasonably be expected to be the basis of a claim against you or any

2   current or former Attorney in the Firm or its predecessors, regardless of the merit of such claim?"

3       56.     The 2019 Application provides:

4       **IT IS AGREED THAT ANY CLAIM ARISING FROM OR IN
        CONNECTION WITH ANY CLAIM, SUIT, FACT, EVENT,
5       CIRCUMSTANCE, ACT, ERROR OR OMISSION DISCLOSED OR
        THAT SHOULD HAVE BEEN DISCLOSED IN RESPONSE TO THE
6       CLAIM HISTORY SECTION OF THIS APPLICATION WILL BE
        EXCLUDED FROM COVERAGE UNDER THE POLICY.**
7

8   (Emphasis in original).

9                               **C. Policy**

10      57.     ALPS issued the Policy to the Levine Firm for the policy period May 15, 2019 to

11  May 15, 2020.  (Exhibit 1, Declarations Items 1 and 4).

12      58.     The Policy identifies two individual insured attorneys: Levine and Garfinkel.

13  (Exhibit 1, Declarations Item 3).

14      59.     The Policy provides legal professional liability insurance on a claims made and

15  reported basis.  (Exhibit 1, Insuring Agreements § 1.A).

16      60.     The Policy's insuring agreement states, in relevant part:

17      A.      COVERAGE

18      Subject to the Limit of Liability, exclusions, conditions and other terms of this
        Policy, the Company agrees to pay on behalf of the Insured all sums (in excess of
19      the Deductible amount) that the Insured becomes legally obligated to pay as
        Damages, arising from or in connection with A CLAIM FIRST MADE
20      AGAINST THE INSURED AND FIRST REPORTED TO THE COMPANY
        DURING THE POLICY PERIOD, provided that all of the following conditions
21      are satisfied:

22

23      1.      The Claim arises from a Wrongful Act that occurred on or after the
                Retroactive Coverage Date set forth in Item 2 of the Declarations;
24

25      2.      At the Effective Date of this Policy, no Insured knew or reasonably should
                have known or foreseen that the Wrongful Act might be the basis of a
26              Claim;

27      3.      Notice of the Claim or the Wrongful Act was not given nor required to be
                given to any other insurer prior to the Effective Date; and
28  ///

LEMONS, GRUNDY
& EISENBERG
A PROFESSIONAL CORPORATION
6005 PLUMAS STREET
THIRD FLOOR
RENO, NV 89519-6069
(775) 786-6868

12

4.      The Claim is not otherwise covered under any other insurance policy that the Company has issued to the Named Insured.

B.      DEFENSE AND CLAIM EXPENSES

1.      For any Claim covered under this Policy, the Company shall have the right and the duty to defend such Claim even if any or all of the allegations of the Claim are groundless, false or fraudulent[.]  . . .

2.      The Company shall pay Claim Expenses in accordance with the terms of this Policy.  The Company shall not have a duty to defend or to pay such expenses as to any Claim not covered under this Policy, and shall have the right to seek reimbursement from any Insured, who shall promptly provide such reimbursement, for any amount paid by the Company in defending any such non-covered Claim, including any amount paid in defending a non-covered Claim that is asserted together with one or more covered Claims.

(Exhibit 1, Insuring Agreements §§ 1.A-1.B.2) (emphasis in original).

61.      "Claim" is defined in the Policy as "a demand for money or services including, but not necessarily limited to, the service of suit or institution of arbitration or alternative dispute resolution proceedings against the Insured."  (Exhibit 1, Definitions § 2.C).

62.      The Policy specifically excludes from the definition of "Claim" any "demand, service or proceeding arising from or in connection with any actual or alleged . . . Bodily Injury of any person."  (Exhibit 1, Definitions § 2.C.10).

63.      "Bodily Injury" is defined in the Policy as "any mental, psychological, or emotional injury, anguish, tension, distress, pain, suffering, shock or death, regardless of whether or not such condition arises from any injury to the body, from any sickness or disease, or from any death."  (Exhibit 1, Definitions § 2.B).

64.      "Claim Expenses" is defined in the Policy, in relevant part, as "[f]ees charged by any attorney(s) designated" by ALPS "to defend a Claim or otherwise represent an Insured;" and "[a]ll other fees, costs, and expenses resulting from the investigation, adjustment, defense, and appeal of a Claim (including a suit or proceeding arising in connection therewith), if incurred by [ALPS]."  (Exhibit 1, Definitions §§ D.1-D.2).

65.      "Wrongful Act" is defined in the Policy as "an actual or alleged: (1) [a]ct, error or omission in Professional Services that were or should have been rendered by the Insured; and

LEMONS, GRUNDY
& EISENBERG
A PROFESSIONAL CORPORATION
6005 PLUMAS STREET
THIRD FLOOR
RENO, NV 89519-6069
(775) 786-6868

13

(2) [a] Personal Injury resulting from the Professional Services of the Insured."  (Exhibit 1, Definitions § 2.DD).

66.     Under the Policy, "Professional Services" are defined as "services or activities performed for and on behalf of the [Levine Firm] or a Predecessor Law Firm and rendered solely to others as", in relevant part, "[a]n Attorney in an attorney-client relationship on behalf of one or more clients applying the Attorney's specialized education, knowledge, skill, labor, experience and/or training, including pro bono services[.]"  (Exhibit 1, Definitions § 2.Y.1).

67.     "Damages" is defined in the Policy as "any . . . [m]onetary award by way of judgment or final arbitration, or any settlement;" the Policy specifically excludes from the definition of "Damages":

> 3.     Punitive, multiple, or exemplary damages, fines, sanctions, penalties or citations, including, without limitation, any consequential or incidental damages, attorney's fees or costs, or pre-judgment or post-judgment interest resulting therefrom, regardless against whom the same are levied or imposed and regardless of whether the same were levied or imposed in a separate matter or proceeding;
>
> 4.     Awards deemed uninsurable by law;
>
> 5.     Injunctive, declaratory, or other equitable relief, or costs or fees incident thereto;
>
> 6.     Restitution, reduction, disgorgement or set-off of any fees, costs, consideration or expenses paid to or charged by an Insured, or any other funds or property of any person or entity presently or formerly held or in any manner directly or indirectly controlled by an Insured;
>
> 7.     Injury or damage to, destruction of, loss of, or loss of use of any funds or property; or
>
> 8.     Pollution, contamination or erosion of any property.

(Exhibit 1, Definitions § 2.H).

68.     "Organization" is defined in the Policy as "any corporation, partnership, limited partnership, limited liability partnership or limited liability company; association; charitable entity, enterprise or organization; . . . mutual fund or investment trust; or any other business entity, enterprise or organization of any kind or nature whatsoever."     (Exhibit 1, Definitions § 2.T).

LEMONS, GRUNDY
& EISENBERG
A PROFESSIONAL CORPORATION
6005 PLUMAS STREET
THIRD FLOOR
RENO, NV 89519-6069
(775) 786-6868

14

69.     The Policy does not apply to:

ANY CLAIM ARISING FROM OR IN CONNECTION WITH . . . [a]ny Professional Services that were rendered or should have been rendered to or in connection with any Organization . . . of which, at the time such Professional Services were or should have been rendered: (1) [a]n Insured was an officer, director, employee or other fiduciary; . . . or (3) [a]n Insured served in any capacity to directly or indirectly control, operate or manage such Organization.

(Exhibit 1, Exclusions §§ 3.C.1 & 3.C.3).

70.     The Policy does not apply to:

ANY CLAIM ARISING FROM OR IN CONNECTION WITH . . . [a]ny Wrongful Act that occurred prior to the Effective Date of this Policy, if . . . [p]rior to the Effective Date of this Policy, any Insured gave or should have given to any insurer, notice of a Claim or potential Claim arising from or in connection with the Wrongful Act, or from any Wrongful Act that is connected temporally, logically or causally, by any common fact, circumstance, situation, transaction, event, advice or decision to the Claim or potential Claim.

(Exhibit 1, Exclusions § 3.E.3) (emphasis in original).

71.     The Policy does not apply to any claim arising from or in connection with "[a]ny dispute over fees or costs, or any Claim that seeks, whether directly or indirectly, the return, reimbursement or disgorgement of fees, costs, or other funds or property held or controlled at any time by an Insured[.]"  (Exhibit 1, Exclusions § 3.I).

72.     The Policy does not apply to any claim arising from or in connection with "[a]ny dishonest, fraudulent, criminal, malicious, or intentionally wrongful or harmful act, error or omission committed by, at the direction of, or with the consent of an Insured, or any Personal Injury arising from or in connection with such conduct[.]"  (Exhibit 1, Exclusions § 3.A).

**IV.  Notice to ALPS and Claim-Related Communications**

73.     By correspondence dated January 14, 2020 ("January 14, 2020 Correspondence"), Defendants first provided ALPS with notice of the Claim.

74.     By correspondence to Defendants dated February 27, 2020 ("February 2020 Reservation"), ALPS provided Defendants with ALPS's coverage position with respect to the Claim and agreed to engage counsel to represent Defendants with respect to the Claim under the Policy, subject to a complete reservation of ALPS's rights to deny coverage and reimbursement of expenses incurred by ALPS incident to the Claim; with Defendants' consent, ALPS engaged

LEMONS, GRUNDY & EISENBERG
A PROFESSIONAL CORPORATION
6005 PLUMAS STREET
THIRD FLOOR
RENO, NV 89519-6069
(775) 786-6868

15

Sheri Thome, Esq. with Wilson Elser Moskowitz Edelman & Dicker LLP ("Wilson Elser") to represent Defendants with respect to the Suit.

75.     By correspondence to personal counsel for Defendants dated April 6, 2022, ALPS supplemented the February 2020 Reservation and agreed to continue defending Defendants with respect to the Claim under the Policy, subject to a complete reservation of ALPS's rights to deny coverage and reimbursement of expenses incurred by ALPS incident to the Claim.

**FIRST CAUSE OF ACTION**

**(For a Declaration the Policy Does Not Afford
Coverage to Defendants for the Claim)**

76.     ALPS incorporates and realleges paragraphs 1 through 75 as if fully set forth herein.

77.     The Policy does not afford coverage for the Claim to the extent any exclusions in the Policy apply to exclude coverage.

78.     The Policy specifically excludes coverage for:

> ANY CLAIM ARISING FROM OR IN CONNECTION WITH . . . [a]ny Professional Services that were rendered or should have been rendered to or in connection with any Organization . . . of which, at the time such Professional Services were or should have been rendered: (1) [a]n Insured was an officer, director, employee or other fiduciary; . . . or (3) [a]n Insured served in any capacity to directly or indirectly control, operate or manage such Organization.

(Exhibit 1, Exclusions §§ 3.C.1 & 3.C.3).

79.     Under the Policy, "Professional Services" are defined as "services or activities performed for and on behalf of the [Levine Firm] or a Predecessor Law Firm and rendered solely to others as", in relevant part, "[a]n Attorney in an attorney-client relationship on behalf of one or more clients applying the Attorney's specialized education, knowledge, skill, labor, experience and/or training, including pro bono services[.]"  (Exhibit 1, Definitions § 2.Y.1).

80.     The Policy defines "Organization" to mean "any corporation, partnership, limited partnership, limited liability partnership or limited liability company; association; charitable entity,  enterprise or organization;  . . .  mutual fund or investment trust;  or any other

///

LEMONS, GRUNDY
& EISENBERG
A PROFESSIONAL CORPORATION
6005 PLUMAS STREET
THIRD FLOOR
RENO, NV 89519-6069
(775) 786-6868

16

business entity, enterprise or organization of any kind or nature whatsoever."  (Exhibit 1, Definitions § 2.T).

81.    In the Complaint, the Shustek Parties allege Levine was Chief Administrative Officer, Chief Operating Officer, and General Counsel for MVP, General Counsel of TPR, and was a "trusted business advisor" to TRP and MVP "outside his capacity as an attorney", while simultaneously acting as counsel to all the Shustek Parties.  (Exhibit 2 ¶¶ 4, 65).  The Shustek Parties further allege MVP provided "advisory and management services to TPR."  (*Id*. ¶ 2).

82.    All the allegations in the Complaint refer to a time and series of events during which Levine was an officer or other fiduciary of MVP and TPR, and while Levine served in a capacity to directly or indirectly control, operate, or manage MVP and TPR.  (Exhibit 2).

83.    The Claim is outside the coverage afforded by the Policy because it arises from or in connection with Professional Services rendered to or in connection with an Organization of which, at the time such Professional Services were or should have been rendered, an Insured was an officer, director, employee or other fiduciary, or an Insured served in any capacity to directly or indirectly control, operate, or manage such Organization.  (Exhibit 1, Exclusions §§ 3.C.1 & 3.C.3; Exhibit 2).

84.    The Policy specifically excludes coverage for any claim arising from or in connection with "[a]ny dispute over fees or costs, or any Claim that seeks, whether directly or indirectly, the return, reimbursement or disgorgement of fees, costs, or other funds or property held or controlled at any time by an Insured[.]"  (Exhibit 1, Exclusions § 3.I).

85.    In the Suit, the Shustek Parties seek recovery of approximately $500,000 paid to Levine under the Employment Agreement.  (Exhibit 2 ¶¶ 11, 124, 127).

86.    The Claim is outside the coverage afforded by the Policy because it seeks, whether directly or indirectly, the return, reimbursement, or disgorgement of fees, costs, or other funds or property held or controlled at any time by an insured.  (Exhibit 1, Exclusions § 3.I; Exhibit 2 ¶¶ 11, 124, 127).

87.    The Policy specifically excludes coverage for any claim arising from or in connection with "[a]ny dishonest, fraudulent, criminal, malicious, or intentionally wrongful or

LEMONS, GRUNDY
& EISENBERG
A PROFESSIONAL CORPORATION
6005 PLUMAS STREET
THIRD FLOOR
RENO, NV 89519-6069
(775) 786-6868

17

harmful act, error or omission committed by, at the direction of, or with the consent of an Insured, or any Personal Injury arising from or in connection with such conduct[.]"   (Exhibit 1, Exclusions § 3.A).

88.    In the Complaint, the Shustek Parties allege Defendants' "intentional conduct was oppressive, fraudulent, and made or committed with malice, for which punitive damages should be assessed." (Exhibit 2 ¶ 52).  The Shustek Parties further allege Defendants' "conduct was knowing, intentional, oppressive, malicious, and done in conscious disregard of [the Shustek Parties'] rights and of the probable harmful consequences of Defendants' wrongful actions." (*Id*. ¶¶ 61, 72, 80, 91, 101, 109, 117).

89.    In the Complaint, the Shustek Parties allege Levine: "acted against Shustek by disparaging him before active and potential business partners without Shustek's knowledge or consent"; made "false statements" to third parties regarding an FBI investigation of Shustek; caused "emotional distress and damage to [Shustek's] reputation" with his "defamatory statements and invasion of Shustek's privacy"; and made "inflammatory false statements" regarding Shustek to third parties.  (Exhibit 2 ¶¶ 18, 20, 51, 69, 78, 86-87, 94, 104, 112).

90.    The Claim is outside the coverage afforded by the Policy because it arises from or in connection with dishonest, fraudulent, criminal, malicious, or intentionally wrongful or harmful acts, errors, or omissions committed by, at the direction of, or with the consent of an Insured, or any Personal Injury arising from or in connection with such conduct.  (Exhibit 1, Exclusions § 3.A; Exhibit 2 ¶¶ 18, 20, 51-52, 61, 69, 72, 78, 80, 86-87, 91, 94, 101, 104, 112, 117).

91.    The Policy does not afford coverage for the Claim to the extent the relief sought incident to the Claim does not constitute "Damages" as defined in the Policy.  (Exhibit 1, Insuring Agreements § 1.A & Definitions § 2.H).

92.    The Policy specifically excludes from the definition of "Damages", in relevant part:

3.    Punitive, multiple, or exemplary damages, fines, sanctions, penalties or citations, including, without limitation, any consequential or incidental damages, attorney's fees or costs, or pre-judgment or post-judgment

LEMONS, GRUNDY
& EISENBERG
A PROFESSIONAL CORPORATION
6005 PLUMAS STREET
THIRD FLOOR
RENO, NV 89519-6069
(775) 786-6868

18

interest resulting therefrom, regardless against whom the same are levied or imposed and regardless of whether the same were levied or imposed in a separate matter or proceeding;

\* \* \*

5.  Injunctive, declaratory, or other equitable relief, or costs or fees incident thereto;

6.  Restitution, reduction, disgorgement or set-off of any fees, costs, consideration or expenses paid to or charged by an Insured, or any other funds or property of any person or entity presently or formerly held or in any manner directly or indirectly controlled by an Insured; [or]

7.  Injury or damage to, destruction of, loss of, or loss of use of any funds or property[.]

(Exhibit 1, Definitions §§ 2.H.3, 2.H.5-7).

93.    In the Complaint, the Shustek Parties seek, *inter alia*, "punitive and exemplary damages from Defendants in an amount to be proven at trial, pursuant to Nev. Rev. Stat. 42.005", "reasonable attorneys' fees and costs" incident to the Suit, and "interest against Defendants at the maximum rate allowable by law."  (Exhibit 2 ¶¶ 52, 54, 61, 72-73, 80, 91-92, 101-102, 109-110, 117-118, 125, 129, 132-134).  The Shustek Parties further seek a "declaratory judgment from [the] Court setting forth the rights, interests, and liabilities amongst the parties" as to the Employment Agreement and recovery of approximately $500,000 paid to Levine under the Employment Agreement.  (*Id*. ¶¶ 124, 126-130).

94.    The Shustek Parties' demand for punitive and exemplary damages, attorneys' fees and costs incident to the Suit, and interest on any judgment "at the maximum rate allowable by law" are excluded from the definition of "Damages", and outside the coverage afforded by the Policy, because such amounts are "[p]unitive, multiple, or exemplary damages, fines, sanctions, penalties or citations, including, without limitation, any consequential or incidental damages, attorney's fees or costs, or pre-judgment or post-judgment interest resulting therefrom[.]"  (Exhibit 1, Definitions § 2.H.3).

///

///

LEMONS, GRUNDY
& EISENBERG
A PROFESSIONAL CORPORATION
6005 PLUMAS STREET
THIRD FLOOR
RENO, NV 89519-6069
(775) 786-6868

19

95.     The Shustek Parties' demand for declaratory relief with respect to enforcement of the Employment Agreement is excluded from the definition of "Damages" and outside the coverage afforded by the Policy.  (Exhibit 1, Definitions § 2.H.5).

96.     The Shustek Parties' demand for recovery or disgorgement of fees paid to Defendants under the Employment Agreement, or otherwise, is excluded from the definition of "Damages" and outside the Policy's coverage.  (Exhibit 1, Definitions § 2.H.6).

97.     The Policy only affords coverage with respect to "Damages" arising from or in connection with a "Claim" against the Insured.  (Exhibit 1, Insuring Agreements § 1.A).

98.     Under the Policy, "Claim" is defined as "a demand for money or services including, but not necessarily limited to, the service of suit or institution of arbitration or alternative dispute resolution proceedings against the Insured."  (Exhibit 1, Definitions § 2.C).

99.     The Policy specifically excludes from the definition of "Claim" any "demand, service or proceeding arising from or in connection with any actual or alleged . . . Bodily Injury of any person."  (Exhibit 1, Definitions § 2.C.10).

100.     Under the Policy, "Bodily Injury" is defined as "any mental, psychological, or emotional injury, anguish, tension, distress, pain, suffering, shock or death, regardless of whether or not such condition arises from any injury to the body, from any sickness or disease, or from any death."  (Exhibit 1, Definitions § 2.B).

101.     In the Complaint, Shustek alleges he "suffered emotional distress and damage to his reputation as a direct result of Levine's defamatory statements and invasion of Shustek's privacy."  (Exhibit 2 ¶ 51).  Shustek further alleges he "suffered mental distress and personal humiliation from Levine's serious accusations of illegal conduct in his business."  (*Id*. ¶ 115).

102.     The Policy does not afford coverage for the Claim to the extent it arises from or in connection with any actual or alleged Bodily Injury, which includes mental or emotional injury or distress of any person.  (Exhibit 1, Definitions §§ 2.B, 2.C; Exhibit 2 ¶¶ 51, 115).

103.     The Policy potentially provides coverage for claims only if "[a]t the Effective Date of this Policy, no Insured knew or reasonably should have known or foreseen that the Wrongful Act might be the basis of a Claim[.]"  (Exhibit 1, Insuring Agreements § 1.A.2).

LEMONS, GRUNDY
& EISENBERG
A PROFESSIONAL CORPORATION
6005 PLUMAS STREET
THIRD FLOOR
RENO, NV 89519-6069
(775) 786-6868

104.    The Policy specifically excludes from coverage any claim arising from or in connection with "[a]ny Wrongful Act that occurred prior to" the Policy's May 15, 2019 effective date if:

> Prior to the Effective Date of this Policy, any Insured gave or should have given to any insurer, notice of a Claim or potential Claim arising from or in connection with the Wrongful Act, or from any Wrongful Act that is connected temporally, logically or causally, by any common fact, circumstance, situation, transaction, event, advice or decision to the Claim or potential Claim.

(Exhibit 1, Exclusions § 3.E.3).

105.    Under the Policy, "Wrongful Act" is defined as "an actual or alleged: (1) [a]ct, error or omission in Professional Services that were or should have been rendered by the Insured; and (2) [a] Personal Injury resulting from the Professional Services of the Insured." (Exhibit 1, Definitions § 2.DD).

106.    All of the facts and events alleged in the Complaint occurred prior to the Policy's May 15, 2019 effective date, including the formation of the Employment Agreement, MVP's termination of the Employment Agreement "due to Levine's conduct", Levine's alleged disclosure of privileged information, and the failure of TRP's attempted public offering. (Exhibit 2).

107.    Despite knowledge of the events alleged in the Complaint, Defendants did not notify ALPS of any actual or potential claim against Defendants prior to the Policy's May 15, 2019 effective date.

108.    Defendants first notified ALPS of a potential claim or circumstances from which the Claim could arise in the January 14, 2020 Correspondence.

109.    The Claim is outside the coverage afforded by the Policy because: (a) prior to the May 15, 2019 effective date of the Policy, Defendants knew or reasonably should have known the acts, errors, or omissions alleged in the Claim might be the basis of a claim; (b) prior to the Policy's May 15, 2019 effective date, Defendants should have given ALPS notice of the acts, errors, or omissions that form the basis of the Claim or the potential claims against Defendants arising from the acts, errors, or omissions that form the basis of the Claim; and (c) Defendants did not notify ALPS of the acts, errors, or omissions that form the basis of the Claim or the

LEMONS, GRUNDY
& EISENBERG
A PROFESSIONAL CORPORATION
6005 PLUMAS STREET
THIRD FLOOR
RENO, NV 89519-6069
(775) 786-6868

21

potential claims against Defendants arising from the acts, errors, or omissions that form the basis of the Claim until January 14, 2020, after inception of the Policy.

110.    An actual controversy exists between ALPS and Defendants regarding whether the Policy affords coverage for the Claim.

111.    Because the Claim is outside the coverage afforded by the Policy, ALPS is entitled to a declaratory judgment in its favor, pursuant to 28 U.S.C. § 2201, declaring the Policy does not afford coverage for the Claim and ALPS has no duty to defend or indemnify Defendants with respect to the Claim.

**SECOND CAUSE OF ACTION**

**(Reimbursement of Defense Expenses)**

112.    ALPS incorporates and realleges paragraphs 1 through 111 as if fully set forth herein.

113.    The Policy states ALPS has no duty to defend or pay Claim Expenses for "any Claim not covered" and has "the right to seek reimbursement from any Insured, who shall promptly provide such reimbursement, for any amount paid by the Company in defending any such non-covered Claim, including any amount paid in defending a non-covered Claim that is asserted together with one or more covered Claims." (Exhibit 1, Insuring Agreements § 1.B.2).

114.    The Policy defines "Claim Expenses" to mean, in relevant part, "[f]ees charged by any attorney(s) designated" by ALPS "to defend a Claim or otherwise represent an Insured;" and "[a]ll other fees, costs, and expenses resulting from the investigation, adjustment, defense, and appeal of a Claim (including a suit or proceeding arising in connection therewith), if incurred by [ALPS]." (Exhibit 1, Definitions §§ D.1-D.2).

115.    ALPS is providing Defendants with representation by Wilson Elser with respect to the Claim under the Policy subject to a complete reservation of rights, including the right to seek recovery from the Levine Firm, Levine, or any insured under the Policy of all amounts paid by ALPS in defense of non-covered aspects of the Claim.

116.    For the reasons described above in Paragraphs 76 through 110, the Claim is outside the coverage afforded by the Policy.

LEMONS, GRUNDY
& EISENBERG
A PROFESSIONAL CORPORATION
6005 PLUMAS STREET
THIRD FLOOR
RENO, NV 89519-6069
(775) 786-6868

22

117.    ALPS is entitled to judgment in its favor and against Defendants for the amount of attorneys' fees and costs paid to defend the Defendants with respect to the Claim because the Claim is not covered under the Policy.

WHEREFORE, ALPS prays that judgment be entered in its favor and against Defendants as follows:

1.    Declaring the Policy does not afford coverage to Defendants for the Claim, as articulated in the Suit;

2.    Declaring ALPS has no duty to defend or indemnify Defendants under the Policy with respect to the Claim, as articulated in the Suit;

3.    Awarding damages in favor of ALPS and against Defendants in the amount of the attorneys' fees and costs paid to defend the Defendants with respect to the Claim; and

4.    Awarding ALPS such additional relief as shall be deemed appropriate in the circumstances, together with its costs and expenses.

Dated this 6th day of April, 2022.

LEMONS, GRUNDY & EISENBERG

By:    /s/ Douglas R. Brown
       Douglas R. Brown, Esq.

       *Attorneys for Plaintiff*
       *ALPS Property & Casualty*
       *Insurance Company*

LEMONS, GRUNDY
& EISENBERG
A PROFESSIONAL CORPORATION
6005 PLUMAS STREET
THIRD FLOOR
RENO, NV 89519-6069
(775) 786-6868

23