1
2
3                        UNITED STATES DISTRICT COURT
4                             DISTRICT OF NEVADA
5                                   * * *

6   ALPS PROPERTY & CASUALTY            Case No. 3:22-cv-00160-MMD-CSD
    INSURANCE COMPANY,
7                                                      ORDER
                              Plaintiff,
8        v.

9
    LEVINE LAW GROUP, INC., *et al.*,
10
                              Defendants.
11

12  **I.    SUMMARY**

13           Plaintiff Alps Property & Casualty Insurance Company seeks declaratory judgment

14  that the legal malpractice insurance policy ("Policy") it issued to Defendants Levine Law

15  Group, Inc. and Ira S. Levine does not cover Defendants in a suit brought by The Parking

16  REIT, Inc., MVP Realty Advisors, LLC, and Michael V. Shustek (collectively, the "Shustek

17  Parties") against Defendants in Nevada state court ("Shustek Action"),[1] along with a

18  declaration of no duty to defend or indemnify and a declaration that Plaintiff is entitled to

19  reimbursement from Defendants for expenses Plaintiff incurs in defending Defendants in

20  the Shustek Action. (ECF No. 1.) Before the Court is Defendants' motion to dismiss (ECF

21  No. 12), or in the alternative, motion to transfer venue (ECF No. 13).[2] As further explained

22  below, the Court in its discretion declines to exercise jurisdiction over this declaratory

23  judgment action and therefore grants Defendants' motion to dismiss.

24
25

26           [1]That case is currently pending in the Eighth Judicial District Court of the State of
    Nevada in Clark County. *The Parking REIT, Inc., et al. v. Ira S. Levine, et al.*, Case No.
27  A-20-808902-C.

28           [2]Both motions are identical in content. For the sake of consistency, the Court will
    cite to Defendants' motion to dismiss (ECF No. 12) and corresponding exhibits throughout
    the order. Plaintiff responded (ECF No. 15), and Defendants replied (ECF No. 16).

## II.     BACKGROUND

The following allegations are adapted from Plaintiff's complaint (ECF No. 1) and the Shustek Parties' state court amended complaint (ECF No. 12-2). Plaintiff is an insurance company incorporated and with its principal place of business in Montana. (*Id.* at 1.) Levine Law Group is a law firm incorporated and with its principal place of business in Nevada. (*Id.*) Levine is an attorney licensed in Nevada and the president, secretary, treasurer, and director of Levine Law Group. (*Id.*)

The Shustek Parties allege that Levine and Levine Law Group served as their counsel. (ECF No. 12-2 at 3-4.) Under a written agreement with MVP, Levine "was given title of General Counsel, Chief Administrative Officer, and Chief Operating Officer for [MVP]" but "was an independent contractor." (*Id.* at 3-4.) "During Levine's involvement with the Shustek Parties in 2017 and 2018, the Shustek Parties allege TPR was an 'incorporated Real Estate Investment Trust' focused on investing in parking lots and parking garages, MVP was a Nevada limited liability company and 'was at one time the advisor to TPR,' . . . and Shustek was 'a shareholder in and CEO of TPR and a principal and [m]anager of' MVP." (ECF No. 1 at 2.)

Plaintiff asserts that the Shustek Parties allege the following. In or around 2017, as TPR began taking steps to become publicly traded, Levine "began a campaign to oust Shustek from TPR." (*Id.* at 3.) Levine "consistently took positions to paint Shustek in a negative light, to lobby others to take positions adverse to him, and even at one point to attempt to convince TPR to terminate Shustek so that Levine could take over as CEO of TPR." (*Id.* at 4.) Levine "published without Shustek's knowledge or consent the false statement to [the counsel of the initial public offering ("IPO") underwriters] that Shustek was under FBI investigation." (*Id.*) Levine "started an internal investigation of [a] contrived whistleblower complaint" against Shustek. (*Id.*) TPR engaged a law firm to conduct an investigation into the whistleblower allegations, which "cost millions of dollars" and "prevented TPR from meeting reporting and filing deadlines." (*Id.*) Shustek was eventually exonerated from any wrongdoing and kept on as TPR's CEO. (*Id.* at 5.)

1    On June 19, 2018, MVP terminated its "employment" agreement with Levine due

2  to his conduct. (*Id*.) The Shustek Parties allege that because of Levine's adverse actions,

3  "TPR was ultimately unable to proceed with its planned IPO" and the New York Stock

4  Exchange "eventually declined the previously approved listing," resulting in millions of

5  dollars in loss of value to TPR. (*Id*.)

6    Plaintiff issued Defendants the Policy, Lawyers Professional Liability Insurance

7  Policy No. ALPS9032-16 for the policy period of May 15, 2019 to May 15, 2020. (*Id*. at 2,

8  12.) The Policy provides coverage for certain claims against Defendants subject to

9  several exclusions. (*Id*. at 12-15.)

10    On January 21, 2020, the Shustek Parties filed a complaint in state court against

11  Defendants, asserting claims for: (1) legal malpractice; (2) breach of fiduciary duty; (3)

12  breach of confidential relationship—against Levine; (4) interference with prospective

13  economic relations; (5) defamation per se—Shustek against Levine; (6) business

14  disparagement—TPR against Levine; (7) false light—Shustek against Levine; (8) breach

15  of the implied covenant of good faith and fair dealing; and (9) declaratory relief under NRS

16  Chapter 30. (*Id*. at 5-6.) Presently, Plaintiff is providing Defendants with representation in

17  the Shustek Action, "subject to a complete reservation of [Plaintiff's] rights to deny

18  coverage and reimbursement of expenses incurred." (*Id*. at 15-16, 22.)

19    On April 6, 2022, Plaintiff filed this action seeking a declaratory judgment that the

20  Policy does not afford coverage to Defendants for the Shustek Action, Plaintiff has no

21  duty to defend or indemnify Defendants in the Shustek Action, and Plaintiff is entitled to

22  reimbursement from Defendants for expenses incurred in defending them in the Shustek

23  Action. (*Id*. at 16, 22-23.) Plaintiff alleges that six coverage exclusions apply, which the

24  Court refers to as the: (1) "Professional Services" Exclusion; (2) "Reimbursement or

25  Disgorgement of Fees" Exclusion; (3) "Intentionally Wrongful Act" Exclusion; (4)

26  "Damages" Exclusion; (5) "Emotional Injury" Exclusion; and (6) "Prior to Effective Date"

27  Exclusion. (*Id*. at 16-22.)

28

On May 11, 2022, the Shustek Parties amended their state court complaint, adding a fourth plaintiff, Vestin Mortgage, LLC, another Nevada limited liability company affiliated with Shustek, and a tenth claim for relief against Defendants: "Legal Malpractice – SEC Investigation and Complaint." (ECF No. 12-2 at 2-3, 26-28.)

## III.   DISCUSSION

The Court first addresses whether it will in its discretion exercise its jurisdiction over Plaintiff's declaratory judgment claims. As further explained below, because the Court ultimately finds that the relevant factors weigh against exercising jurisdiction and therefore declines to do so, it need not—and does not—reach the merits of Defendants' motion to dismiss Plaintiff's claims under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(3) nor their alternative motion to transfer venue.

### A.   Jurisdiction

The Declaratory Judgment Act states that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). In actions implicating the Declaratory Judgment Act, "the district court must first inquire whether there is an actual case or controversy within its jurisdiction." *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2005) (citing *Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 143 (9th Cir. 1994)). An insurer's declaratory relief action to determine a duty to defend and indemnify their insured in a pending state court case creates an actual case or controversy within the meaning of Article III, even when the underlying liability action has not yet proceeded to judgment. *See Kearns*, 15 F.3d at 144 (9th Cir. 1994). It is undisputed that this case is justiciable, as Plaintiff's request that the Court determine its legal duty to defend and indemnify Defendants in the underlying Shustek Action is an actual case and controversy within the meaning of Article III. *See id.*

But whether to hear a case under the Declaratory Judgment Act is committed to the Court's "unique and substantial discretion." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). "In exercising authority under the Declaratory Judgment Act, a district court

'should avoid needless determination of state law issues; it should discourage litigants from filing declaratory actions as a means of forum shopping; and it should avoid duplicative litigation.'" *Acuity v. Cifuni*, Case No. 2:19-cv-01879-GMN-DJA, 2020 WL 5763606, at *2 (D. Nev. Sept. 28, 2020) (referencing the three *Brillhart* factors); *see also Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942). These prudential considerations reflect the core concerns of "how judicial economy, comity, and federalism are affected in a given case." *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1226 (9th Cir. 1998). The Court therefore must decide whether to exercise its jurisdiction by analyzing the *Brillhart* factors. *See Robinson*, 394 F.3d at 669 (citing *Kearns*, 15 F.3d at 143-44).

Defendants argue that the Court in its discretion should decline to exercise jurisdiction over Plaintiff's claims and dismiss them under the Declaratory Judgment Act, in pertinent part, because: (1) the requested declaratory action will not settle all aspects of the pending controversy; (2) the requested declaration of rights and status of the parties requires determination of purely Nevada state law issues; and (3) this filing was reactive to Defendants' demand for coverage for the purpose of procedurally fencing in Defendants in Plaintiff's favored forum. (ECF No. 12 at 19-22.) Plaintiff counters that the Court should exercise its jurisdiction because: (1) the exercise of jurisdiction does not result in needless litigation of state law issues; (2) the coverage suit is not reactive litigation, forum shopping, or procedural fencing; and (3) the exercise of jurisdiction will not result in duplicative litigation. (ECF No. 15 at 14-18.) As explained below, the Court agrees in pertinent part with Defendants and finds that exercising jurisdiction over Plaintiff's request for relief would ultimately not be appropriate under the *Brillhart* factors and other prudential reasoning.

### 1.    Needless Litigation of State-Law Issues

The first *Brillhart* factor—discouraging needless litigation of state-law issues—weighs against exercising jurisdiction because each of the declarations that Plaintiff seeks requires a determination of purely state-law issues. *See R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 975 (9th Cir. 2011) ("In prior cases, [the Ninth Circuit] ha[s]

1   recognized that needless determination of state law issues alone may support remand.");

2   *see also Acuity*, 2020 WL 5763606 at *2 (reasoning there was little federal interest for a

3   district court sitting in diversity to decide an insurer's declaratory relief action that solely

4   involved interpretation of Nevada insurance law). "A 'needless determination of state law

5   may involve: (1) an ongoing parallel state court proceeding regarding the precise state

6   law issue, (2) an area of law Congress expressly left to the states, or (3) a lawsuit with no

7   compelling federal interest.'" *Rimini St., Inc. v. Hartford Fire Ins. Co.*, Case No. 2:15-cv-

8   2292-JCM-CWH, 2016 WL 3192709 (D. Nev. June 6, 2016) (citation omitted).

9       Here, Plaintiff's complaint involves only state insurance law, which is "an area that

10  Congress has expressly left to the states." *See Acuity*, 2020 WL 5763606 at *2 (citing

11  *Cont'l Cas. Co. v. Robsac Indus.*, 947 F.2d 1367, 1371 (9th Cir. 1991), *overruled on other

12  grounds by Dizol*, 133 F.3d at 1227). And jurisdiction is based on diversity jurisdiction

13  (ECF No. 1 at 2), indicating that there is no compelling federal interest in this action. *See

14  id.* ("Where . . . the sole basis of jurisdiction is diversity of citizenship, the federal interest

15  is at its nadir. Thus, the *Brillhart* policy of avoiding unnecessary declarations of state law

16  is especially strong.") (internal quotation marks and citation omitted).

17      Plaintiff argues that, as the Court found in *Cincinnati Specialty Underwriters Ins.

18  Co. v. Red Rock Hounds*, 511 F. Supp. 3d 1105, 1111 (D. Nev. 2021), the underlying

19  concern in *Brillhart* that "it would be uneconomical as well as vexatious for a federal court

20  to proceed in a declaratory judgment suit where another suit is pending in a state court

21  presenting the same issues, not governed by federal law, between the same parties," is

22  not present here. (ECF No. 15 at 15-16.) The Court disagrees with Plaintiff and

23  distinguishes this case from *Red Rock Hounds*. In *Red Rock Hounds*, the Court found

24  that the underlying state-court tort action did not involve the same contract claim, the

25  same parties, nor the "same issues" as the insurance coverage action before the Court.

26  *See* 511 F. Supp. 3d 1105 at 1111. Relatedly, later in the Court's *Red Rock Hounds*

27  analysis of the third *Brillhart* factor, the Court found that "it was conceivable that some

28  issues [the plaintiff] raises involve disputes of fact that will likely be litigated in the

6

1   underlying [tort action]—for example, whether [the defendants] had knowledge that the

2   horse which injured [the state-court plaintiff] was aggressive and could injure guests

3   would be relevant to the negligence and strict liability claims, and could also implicate

4   whether [the state-court plaintiff's] injury was an 'Expected or Intended Injury' that could

5   be excluded from the policy." *Id.* at 1112. But the Court ultimately found that "[e]ven

6   though there may be some overlapping facts litigated in both cases, the issues ultimately

7   are different and unlikely to produce duplicative litigation." *Id.*

8          While it is true that there is similarly no pending state court action between Plaintiff

9   and Defendants on the same contract claim, in contrast to *Red Rock Hounds*, the

10  overlapping issues here are more significant and, to certain extents, key to both the

11  present insurance coverage suit and the underlying Shustek Action. Plaintiff's primary

12  allegation that the "Professional Services" Exclusion[3] applies raises the disputed issue of

13  whether Levine was an officer or other fiduciary to any of the organizational Shustek

14  Parties. (ECF No. 12 at 15-16.) That same issue is also raised by at least the Shustek

15  Parties' breach of fiduciary duty claim—whether Levine was an officer or fiduciary would

16  need to be determined to determine what duties he owed the Shustek Parties and whether

17  he breached them. (ECF No. 12-2 at 16-18.)

18         Also disputed by the parties is whether Levine was working for the Shustek Parties

19  on behalf of Levine Law Group and therefore whether Levine Law Group was actually

20  counsel to the Shustek Parties for purposes of liability for Levine's alleged wrongdoing.

21  (ECF No. 12 at 15-16.) These issues implicate Plaintiff's claim that the "Professional

22  Services" Exclusion applies because "Professional Services" is defined under the Policy

---

23
24         [3]The Policy excludes coverage for "any claim arising from or in connection with":

25         Any Professional Services that were rendered or should have been
           rendered to or in connection with any Organization . . . of which, at the time
26         such Professional Services were or should have been rendered: (1) An
           Insured was an officer, director, employee or other fiduciary; . . . or (3) An
27         Insured served in any capacity to directly or indirectly control, operate or
           manage such Organization.

28  (ECF No. 1 at 16; ECF No. 1-2 at 14.)

as being "performed for or on behalf of the Named Insured," the "Name Insured" being Levine Law Group. (ECF No. 1-2 at 2, 13.) They are also key to almost all the Shustek Parties' claims against Levine Law Group, as almost all the alleged wrongdoing was committed specifically by Levine and may or may not be imputed to Levine Law Group. (ECF No. 12-2 at 5-15.) Accordingly, both actions raise the same determinative questions of what capacity or capacities Levine was working in for the organizational Shustek Parties.

Both actions also raise the same issue of whether Defendants' conduct was intentional or malicious. In the Shustek Action, that issue is raised in the first seven claims by the Shustek Parties against Defendants. (ECF No. 12-2 at 16, 18-20, 22-23, 25 ("Levine's conduct was knowing, intentional, oppressive, malicious . . . .").) In this action, that issue is raised by Plaintiff's allegation that the "Intentionally Wrongful Act" Exclusion applies. (ECF No. 1 at 17-18.) Under that exclusion, the Policy excludes coverage for "any claim arising from or in connection with . . . [a]ny dishonest, fraudulent, criminal, malicious, or intentionally wrongful or harmful act, error or omission committed by, at the discretion of, or with the consent of an Insured, or any Personal Injury arising from or in connection with such conduct." (ECF No. 1 at 17-18; ECF No. 1-2 at 14.) If Defendants' conduct is found to be not intentional nor malicious, but rather negligent, for instance, the Policy could potentially provide coverage. (ECF No. 1-2 at 14.) This overlapping issue is thus central to Plaintiff's allegation that this exclusion applies and therefore, along with the other significant overlapping issues discussed, creates a concern of needless litigation of the same state-law issues. Accordingly, the first *Brillhart* factor favors dismissal.

### 2.    Discouraging Forum Shopping

Because there is no clear evidence of forum shopping, the second *Brillhart* factor is neutral. *See State Farm Mut. Auto. Ins. Co. v. Garcia*, No. 2:13-cv-02099-GMN-VCF, 2014 WL 3421641, at *4 (D. Nev. July 9, 2014) (finding the factor neutral when there is no evidence of forum shopping); *Allstate Fire & Cas. Ins. Co. v. Diamond*, No. 2:14-cv-

1   1044-GMN-VCF, 2015 WL 265422, at *3 (D. Nev. Jan. 21, 2015) (finding the same). While

2   this action may appear to be "reactive litigation" that the Ninth Circuit disfavors, there is

3   no pending state court action between the parties to the declaratory judgment action. *See*

4   *Dizol*, 133 F.3d at 1225 (discouraging exercise of federal jurisdiction over a declaratory

5   judgment action during the pendency of a parallel state court action involving the same

6   issues and parties); *Garcia*, 2014 WL 3421641 at *4 (considering it "important" that the

7   insured defendant had not filed an action in state court against the declaratory judgment

8   plaintiff). This factor therefore weighs neither for nor against dismissal.

9                          **3.    Avoiding Duplicative Litigation**

10          The third *Brillhart* factor, cautioning against duplicative litigation, weighs against

11  the Court's exercise of jurisdiction. For the same reasons articulated under the analysis

12  of the first *Brillhart* factor, the Court finds that even though the parties assert different

13  claims in the Shustek Action and this action, both matters rely on the same set of facts

14  and would ultimately require different factfinders and adjudicators to decide significant,

15  overlapping factual and legal disputes.

16          For instance, as discussed above, key among the overlapping issues is whether

17  Levine was an officer or other fiduciary of one of the organizational Shustek Parties at the

18  time of his alleged wrongdoing. This issue appears to be complicated and could be

19  resolved inconsistently by the state court and this Court. The Shustek Parties' amended

20  complaint alleges "Levine was counsel for Plaintiffs" and, under an agreement, "was given

21  title of General Counsel, Chief Administrative Officer, and Chief Operating Officer for

22  [MVP]." (ECF No. 12-2 at 3-4.) But the same agreement apparently made Levine "an

23  independent contractor" to MVP, so the Shustek Parties also contend that Levine was

24  "not actually an [MVP] officer." (*Id.*) At the same time, however, the Shustek Parties allege

25  that Levine was "effectively their General Counsel" and "held himself out" as such. (*Id.* at

26  4-5.) The Shustek Parties also allege that Defendants violated "duties owed as attorney

27  fiduciaries" and Levine "additionally violated his duties owed as a non-attorney fiduciary,"

28  indicating that Levine may have owed fiduciary duties both as an attorney and as an

officer or other fiduciary. (*Id.* at 17.) Because of its apparent complexity owing to these contradictory facts, this issue therefore poses a risk of both duplicative litigation and inconsistent adjudication. The third factor thus favors dismissal.

Because the *Brillhart* factors weigh in favor of abstention, the Court declines to exercise jurisdiction over Plaintiff's declaratory judgment action at this time and therefore grants Defendants' motion to dismiss. The Court denies Defendants' alternative motion to transfer venue as moot.

## IV.    CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that Defendants' motion to dismiss (ECF No. 12) is granted.

It is further ordered that Defendants' alternative motion to transfer venue (ECF No. 13) is denied as moot.

It is further ordered that this action is dismissed without prejudice.

The Clerk of Court is directed to enter judgment in accordance with this order and close this case.

DATED THIS 19th Day of December 2022.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE